WOODS, Housing Expediter, v. BABCOCK
et al.

MILLER v. BABCOCK et al.

Nos. 10826, 10827.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 22, 1950.

Decided Nov. 24, 1950.

Judgment Vacated Jan. 2, 1951.
See 71 S.Ct. 294.

Benjamin Freidson, Special Litigation Attorney, Office of the Housing Expediter, Washington, D. C., for appellant Woods.

Hardy K. Maclay, Washington, D. C., with whom Wallace M. Cohen and Herbert S. Thatcher, Washington, D. C., were on the brief, for appellant Miller.

Herbert H. Bent, Los Angeles, Cal., of the Bar of the Supreme Court of California, pro hac vice, by special leave of Court, with whom Gordon L. Eakle, Washington, D. C., was on the brief, for appellee Babcock.

Charles S. Rhyne, Washington, D. C., with whom Eugene J. Bradley, William G. Van Meter, David E. Bamford and William F. Wetmore, Jr., all of Washington, D. C., were on the brief, for appellees City of Los Angeles, et al.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

The District Court entered an order directing the federal Housing Expediter to terminate federal rent control in the City of Los Angeles. The Expediter and the intervenor appeal.

The governing statute [1] reads in pertinent part as follows: "The Housing Expe-

---

1. A section added in 1949 (Act of March 30, 1949, 63 Stat. 21) to the Housing and Rent Act of 1947 (Act of June 30, 1947, 61 Stat. 193), which now appears as Section 1894(j) (3), Title 50 Appendix of the United States Code Annotated.

diter shall terminate the provisions of this title [sections 1891-1899 of this Appendix] in any incorporated city, town or village upon receipt of a resolution of its governing body adopted for that purpose in accordance with applicable local law and based upon a finding by such governing body reached as the result of a public hearing held after 10 days' notice, that there no longer exists such a shortage in rental housing accommodations as to require rent control in such city, town or village: * * *." 2

On July 14, 1950, the City Council of Los Angeles, being the governing body of that City, published a notice that a public hearing would be held on July 28, 1950, to determine whether or not there existed such a shortage in rental housing accommodations in the City as to require the continuance of federal rent control. On the specified date a hearing was held, and the Council adopted a resolution which recited a finding that there no longer existed in the City such a shortage in rental housing accommodations as to require rent control. A copy of the resolution was forwarded to the federal Housing Expediter. Thereafter various events transpired which it is unnecessary to recite here, and on October 23, 1950, the Expediter wrote a letter to the City Council rejecting the resolution. Thereupon appellee landlord filed his civil action for a mandatory injunction. A tenant intervened.

The federal statute, from which we have quoted above, requires that the resolution of the governing body of a city pursuant to which the Expediter shall terminate federal rent control, be "adopted for that purpose in accordance with applicable local law". Congress must have meant something by the expression "in accordance with applicable local law". If it had meant that the Expediter should act upon any resolution adopted by a city council, surely it would have said simply that. The noticeable added restriction—"in accordance with applicable local law"—must be accorded meaning.

2. The 1949 statute required that resolutions under the Act be approved by the Governor of the state, but that provision

The Charter of the City of Los Angeles contains the following provisions:

"Sec. 21. All legislative power of the city except as herein otherwise provided is vested in the Council and shall be exercised by ordinance, * * *. Other action of the Council may be by order or resolution, upon motion.

*       *       *       *       *       *

"Sec. 31. All ordinances finally adopted under the provisions of this charter shall be published in the English language by at least one insertion in some daily newspaper printed and published in the City of Los Angeles, or by posting for at least ten days in three public places in said city, and until and without such publication or posting no ordinance shall be valid or take effect.

*       *       *       *       *       *

"Sec. 281. No ordinance, legislative, administrative or executive, passed by the Council shall go into effect until the expiration of thirty days from its publication, [with immaterial exceptions] * * * *

"Sec. 282. At any time within the thirty days mentioned in the preceding section, a petition addressed to the Council and signed by qualified electors of said city equal in number to at least ten per cent of such qualified electors, * * * may be filed with the City Clerk, demanding the submission of any ordinance, order or resolution passed by the Council, to a vote of the qualified electors of said city, except any ordinance, order or resolution which shall take effect upon its publication or passage as provided in the preceding section. * * *."

In summary the foregoing charter provisions are that legislative power must be exercised by ordinance, that ordinances must be published or posted, that without publication or posting an ordinance is not valid, that no ordinance shall go into effect until the expiration of thirty days from its publication, and that within the thirty days a petition for referendum may be filed. In still shorter summary: The charter of Los

was eliminated by the Act of June 23, 1950, Pub.L.No.574, 81st Cong., 2d. Sess.

Angeles provides that all legislative action of the City Council is subject to a petition for a referendum and for that purpose must be published or posted and held for thirty days.

■ The action taken by the Council in the matter before us was neither published nor posted, and it was not withheld from effect for thirty days but was forthwith, upon adoption, forwarded to the Expediter. So, if the action was in the exercise of legislative power, it was not validly taken.

The line between the exercise of legislative power and the exercise of other governmental powers, made critical in the Los Angeles City Charter, is vague in borderline cases, but whatever the boundary of legislative power may be, it clearly includes an action which adopts a policy affecting the public generally and sets in motion the effectuation of that policy.[3] If an action is merely by way of fact-finding in the course of effectuating a policy declared by the legislature, or is merely the formulation of rules and regulations for the purposes of such effectuation, the action is administrative.[4] But if an action is the declaration and adoption of a policy and program by which affairs of general public concern are to be controlled, the action is a legislative act.

The enactment of a rent control law is the exercise of legislative power under any conceivable definition of legislative power. Likewise, the repeal of rent control is unquestionably the exercise of legislative power. If this latter were not true an obstinate city council in Los Angeles could repeal without referendum an act adopted by referendum. The adoption of a resolution which, pursuant to federal statute, will result in the repeal of federal rent control in a city is in effect the adoption of a repeal of such rent control.

Congress intended that the resolution described in this statute be a legislative act. Congress might have provided that upon a finding by some local official or body that a shortage of housing no longer exists in a community, federal rent control should terminate. The making of such a finding would have been an administrative act. In such a statute the policy of decontrolling rent whenever that factual situation was found would have been adopted and fixed by Congress. That is the course Congress took when it directed the Expediter to relinquish control whenever he should find such facts.[5] But Congress did not follow that course when it came to relinquishment pursuant to local community action. There it required that a resolution be adopted by the "governing body" and that it be "adopted for that purpose"; that is, for the termination of federal rent control. The resolution must be "based upon" a finding of fact. The whole of the provision is not merely for a finding of fact but is also for a legislative declaration of local public policy. The statute provides for a clear choice of policy on the part of the local governing body. The discretion to be exercised by that body is a political discretion. The final act is thus a legislative act. We think that to have been the clear intent of Congress.

■ The basic concepts involved in this matter are important. Basically, rent control is a local function, over which the Federal Government has no power. The Federal Rent Control Act is valid only as a war measure.[6] As war conditions receded Congress desired to relinquish federal control. It provided a number of different methods for such relinquishment. It provided for a voluntary relinquishment by federal authority,[7] for relinquishment by cooperative action between the Federal Government and the Governors of the several states,[8] for relinquishment whenever the legisla-

3. See the discussion in Cooley, Constitutional Limitations, p. 175 et seq. (8th ed. 1927).

4. Opp Cotton Mills v. Administrator of Wage and Hour Division of Dept. of Labor, 1941, 312 U.S. 126, 144, 61 S.Ct. 524, 85 L.Ed. 624; Yakus v. United

States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

5. 50 U.S.C.A.Appendix, § 1894(c).

6. Woods v. Cloyd W. Miller Co., 1948, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596.

7. 50 U.S.C.A.Appendix, § 1894(c).

8. 50 U.S.C.A.Appendix, § 1894(e).

ture of a state enacts state rent control legislation,[9] and for relinquishment in any incorporated city, town or village when the governing body of the city adopts a resolution for that purpose, based upon a finding as to the existing housing situation.

We are of opinion that the federal statute requires the exercise of legislative power by the governing body of a city. The resolution adopted by the City Council of the City of Los Angeles was not published, posted, or held for thirty days, as required by the City Charter for the valid exercise of legislative power. It was invalid as an exercise of legislative power. So it was invalid for the purposes of the federal decontrol statute.

The fact that the action was called by the City Council a resolution instead of an ordinance is of no importance. The Council could not fix the validity of its action under its charter by the mere choice of a name for the action. Moreover, if the action was in reality merely a resolution as that word is used in the City Charter, it was invalid because it was an exercise of legislative power, required by the charter to be by ordinance. The use of the word "resolution" instead of "ordinance" in the federal statute is of no importance. Congress was enacting a statute applicable to scores of cities, towns and villages and many different procedures, restrictions and terminologies. It intended that each community should determine by its own local method an issue of importance to the community. It used a word of broad, general meaning, not a word of art. The requirement that the action be in accordance with applicable local law shows that Congress did not mean to specify any particular procedure. When it said "resolution" it did not mean to specify a particular technicality.

A determination by the Expediter as to whether a resolution received by him was adopted in accordance with local law is the sort of determination which executive officials must make constantly in the administration of laws enacted by Congress. But in the case at bar the Expediter acted upon an assumed power which he clearly did not have. In his letter rejecting the resolution of the City Council he recited the reasons for his action, principally his judgment that the resolution was not based upon findings which could reasonably be reached as the result of the public hearing. He said that he had received a report from an impartial observer at the hearing and had heard "through a recording" the exact events which transpired at the hearing and had received a petition from a group purporting to act on behalf of 300,000 tenant families in the City. The statute here under consideration gives the Expediter no power to weigh the evidence received by a local city council in the course of a public hearing, or to determine the relevancy of such evidence. In that respect the conclusion of the city council is final and unreviewable by the Expediter, as the Committees of the Congress said the statute was intended to provide.[10] Congress did not require a record of the required hearing to be kept or forwarded to the Expediter. It would be strange indeed if it intended that he review evidence but prescribed no record of the evidence. Moreover, since the action of the Council was legislative, the hearing was legislative and the consequent action is not required to be upon the preponderance of the evidence, or upon evidence at all. A legislative hearing is for two principal purposes, (1) the information of the legislators and (2) an opportunity for persons who desire to speak, either in testimony or in argument, upon the matter. But legislators are in no way bound by the statements thus received by them. They may act upon presented facts, or upon mere arguments, or upon their own convictions. They act for the future, not in respect to the past. "Evidence" in the legislative process may be helpful, but it certainly is not restrictive.

Since the Expediter so vigorously asserts the propriety of his course as described in his letter of October 23, 1950, we are im-

---

9. 50 U.S.C.A.Appendix, § 1894(j) (1) and (2).

10. Sen.Rep.No.1780, 81st Cong., 2d Sess. 10; H.R.Rep.No.2116, 81st Cong., 2d Sess. 5.

pelled to comment that, even if he had power to determine whether the finding of the City Council could reasonably be reached as the result of the evidence presented at the hearing, he could not do so by the process which he followed. There were official minutes of the session of the Council at which this hearing occurred. They recited in summary fashion the presentations by the persons who spoke. The Expediter says that he had a report from an unidentified observer and a "recording" undescribed and unrevealed. Upon such information he asserts an official conclusion contradictory to the conclusion reached by the City Council. Without going into an extended discussion of the subject, we simply state that the Expediter's claim to such authority is far beyond any conceivable valid process in a matter of this sort. The validity, probity, credibility, and weight of evidence officially received cannot be determined by a reviewing authority through the medium of unidentified observers or unrevealed "recordings". The Expediter's assertion in oral argument that there was no evidence sustaining decontrol presented at the hearing before the Council has not the slightest support in the record. The first thing presented at that hearing was the report of a survey of rental vacancies, which survey had been authorized by the Council some months theretofore; and the second thing presented was the fact that seventy per cent of the cities in Los Angeles County have been decontrolled.

Because the resolution adopted by the City Council was not published or posted or held for thirty days pending a possible petition for referendum, all as required by the City Charter for valid legislative action, we must hold it not, as yet, adopted in accordance with applicable local law and therefore not effective for the purposes of the federal statute prescribing relinquishment of federal rent control in an incorporated city, town or village. The judgment of the District Court is, therefore, reversed and the case remanded with instructions to dismiss the action.

Reversed and remanded.